## THE STATE *v.* WIGGIN.

Evidence that one was often in the store conducted in the name of another; that he bought, sold and bartered goods there, inspected the books and made charges, and went to Boston and bought goods for the store, is evidence to prove that he was a partner; he having formerly been a partner, and the old sign of the firm still remaining upon the building.

If a servant of a firm sell spirits belonging to his employers, with the assent of both, they are guilty of the act of their servant.

If a customer help himself to goods in a store, and place the price within reach of the salesman, and he receive it and put it with the money of the owners, that is a sale by the owners, if they assent.

INDICTMENT, against Joseph H. Wiggin and Samuel L. Wiggin, alleging that the defendants, being joint grocers in company, at Dover, on the 3d of January, A. D. 1844, not being licensed taverners or retailers, unlawfully sold one half gill of certain spirituous liquors called gin, to one Samuel Thompson, for the price of three cents, contrary, &c.

Upon the trial it appeared that the defendants were formerly in partnership as grocers, in Dover, and that March 1, 1843, they gave public notice of the dissolution

of the firm; and that Joseph H. Wiggin, at the same time, gave notice that the business would be continued by him. For the purpose of showing that they were partners at the time of the sale, notwithstanding the business was carried on in the name of Joseph, the government relied upon the evidence that Samuel L. Wiggin, subsequent to the notice of the dissolution, was often in the store; that he bought, sold and bartered goods at the store, as he used to do before; examined the books, and made charges in them; that his sign still remained on the building, placed on the second story, and that he went to Boston and made purchases there.

There was evidence, on the part of the defendants, that soon after the notice of the dissolution, Samuel L. kept a tavern for a short time, and that he was subsequently engaged in superintending other of his personal affairs; and the defendants contended that there was no evidence in the case on which the jury were authorized to find a partnership at the time of the alleged sale.

To prove a sale by the defendants, the government introduced evidence tending to show that Charles Pinkham was employed as a clerk in the store; that liquor was kept in the cellar of the store, and that persons were accustomed to go to the casks, draw and drink liquor with the knowledge and assent of Pinkham, and then to pay him therefor, or leave money for that purpose on the head of the cask, or some other place, which Pinkham took; that this course was pursued with the knowledge and assent of the defendants; that he accounted for the money thus received to whoever carried on the business there; that Thompson obtained the liquor mentioned in the indictment in this mode, and either handed the money to Pinkham or laid it down there, and that Pinkham put it with the other money belonging to the store. There was some evidence tending to show that Joseph H. Wiggin had directed Pinkham not to sell liquor by retail.

The State *v.* Wiggin.

The defendants objected that there was no evidence on which the jury were authorized to find a sale by them. They also objected that the statute on which the indictment was founded was unconstitutional. The court instructed the jury that the statute was constitutional; that notwithstanding the business of the store was carried on in the name of Joseph H., there was evidence, competent for their consideration, to show a partnership; and they might find that the defendants were partners, if they believed, on the whole evidence before them, that the business was carried on for their joint benefit; that if the defendants were partners they were not liable for an unauthorized sale by a clerk, without their knowledge or assent; but that if Pinkham sold by their authority, or as their agent with their assent, they were responsible; that the mode adopted in making a sale was immaterial; that if Pinkham was directed not to sell, but he permitted any person to help himself, with the understanding that he should leave the money, and Pinkham then took and accounted for it to the defendants, who knew and assented to this mode, that would constitute a sale for which the defendants would be liable, if partners.

The jury returned a verdict that the defendants were guilty, and they excepted to the instructions, and moved for a new trial and in arrest of judgment.

*Gove,* attorney-general, for the State.

*Hale* and *Wiggins,* for the defendants.

GILCHRIST, J. The first question for consideration here is, whether or not there was evidence of a copartnership between the defendants, for the indictment alleges a joint sale to have been made by them as co-partners in trade; and the sale, if such there was, having been made by a servant, it becomes very material to ascertain whether the

act is to be imputed to both or to one only of the defendants. If there was no co-partnership, there is no evidence in the case by which both of the defendants can be implicated in the act of the servant.

The force of evidence, bearing upon a question like this, will often depend in a great degree upon the source from which it proceeds. If the fact required to be proved be one within the peculiar knowledge of the party upon whom the burden of proof falls, and the party of course who may be supposed to be in possession of the means of placing the fact in a clear light, a greater certainty and completeness of evidence is demanded; while the party who is a stranger to the transactions, and who seeks to make proof of them against him who knows the whole truth, and can ordinarily show at once what the truth is, is favored in law with certain presumptions in aid of the inconclusive evidence which is often all he can adduce upon a subject that the privies to it are disposed to conceal.

It has been held, for instance, in criminal cases in which it is necessary to allege not only the act, but that the party performing it is not within any exception, or does not possess any qualification which would render the act innocent, it is not necessary in proof to negative the exception or qualification, because if the defendant, who knows the truth, does not offer to prove it, the presumption arises that the fact which would establish his innocence does not exist. We have had occasion to act upon that well recognized law of presumption in cases of prosecution for violations of the license law. *State* v. *Simons,* Hillsborough, July term, 1845.

The same presumption is allowed in favor of a party who seeks to prove the relation of partnership between strangers, so far as to dispense with that strong evidence of the fact that would be required if the partners themselves were required to make proof of it. In the latter

case, the parties taking the burden of proof are conversant of the means by which the connection has been established, and therefore, it is presumed, of the means by which it can be proved; while in the former, no such knowledge commonly exists, and the party is obliged to rely upon proof of such outward demonstrations as may appear to lead to the inference of partnership. And the law, as in analogous cases, furnishes a presumption in aid of the evidence, that the parties who know the truth would repel this inference by evidence of a decisive character, if the truth would admit.

It is, therefore, sufficient in such cases to prove that the parties have acted as partners, and that by their habit, course of dealing, conduct and declarations, they have induced those with whom they have dealt to consider them as partners. 2 Gr. Ev., sec. 483.

It is not necessary, if it were in fact possible, to indicate by general rules or categories what conduct, course of dealing, habits and declarations are sufficient to constitute *prima facie* evidence of partnership, by laying a reasonable foundation for a common belief in the existence of that relation. We think, however, that the facts here disclosed were all of a character that rendered them fit to be considered by a jury as evidence in such a question, and were in the aggregate sufficient to justify them in finding the principal fact which they were produced to prove.

It appeared a partnership formerly existed between the parties. No evidence of its dissolution was offered except the declarations and acts of the parties themselves, who, if there had really been such a severing of their connection, may be supposed to possess the evidence of it in settlements mutually executed, change of books, and other tokens of independent dealing with one another. That circumstance is a proper one to consider in connection with the evidence offered by the prosecution.

It appeared from that evidence that Samuel L. Wiggin

was often in the store which the two defendants had formerly occupied in co-partnership; that he was accustomed, as before the supposed dissolution, to buy, sell and barter there; that he examined the books and made charges in them; that he went to Boston and made purchases, and that the sign of the old firm remained upon the building, as well as the sign of Joseph H. Wiggin, the ostensible conductor of the business. These are all such acts as would indicate an interest in the affairs of the store. If he was a servant of the other defendant, it is reasonable to suppose that the fact might have been shown; that he was a mere volunteer in these proceedings, is not a solution that common minds would readily adopt, but the parties had the benefit of such an hypothesis with the jury.

The weight to be allowed to some of these facts, in establishing the point in issue, depending upon the distinction adverted to, between the cases of the parties who know and those who do not know the truth, is, without doubt, considerable. But be it more or less, this kind of evidence is all that in ordinary circumstances can be adduced, and its influence upon the mind will vary according to the amount of it accumulated, and according to the explanatory facts proved by the parties who alone know the truth, and can give a reason for the existence of facts tending to settle the verdict against them. It is all the evidence that is commonly offered, and be it ever so little, is to the extent, without doubt, competent.

As to the instructions given by the court to the jury concerning the evidence upon which the State relied to prove a sale, it is quite plain that an offence like the one charged may be committed, as well through the agency of another as by the personal act of the party accused. This agency may be created before the act, or by the subsequent ratification of it. The effect of the ratification is the same, whether the agent had been previously forbidden to perform the act, or had done it without being so

The State *v.* Wiggin.

forbidden. It is impossible to sustain an exception to the instructions that were applied to this evidence.

As to the evidence of the sale itself, nothing is more common than for persons seeking to commit an offence against the law, to resort to contrivances by which their acts may be wholly concealed, or their nature and purposes disguised. The night is chosen for the commission of larceny. Pockets are picked under the pretence of some friendly purpose, justifying the necessary personal contact. A kiss may be an act of petit treason. In the case of the *State* v. *Simons,* it was held that the call for spirits, and their subsequent delivery, were competent evidence of a sale, notwithstanding the accompanying act and declarations of the parties tending to prove that they were delivered as a gift. If criminals could justly claim the right to have their words taken for truth, their acts presumed to be sincere, and to have their disguises serve the purposes of protection and concealment, for which they were designed, it is plain that many crimes would escape detection. If a customer comes into a shop, helps himself openly to what he wants within his reach, and places within reach of the salesman a satisfactory price, that is a sale to all appearance. A sale may be conducted without words as well as with, and signs among persons speaking a common language may sometimes be as useful as among those who cannot speak together.

The constitutional question has been settled in the case of the *State* v. *Pierce,* 13 N. H. 536.

The exceptions must, therefore, all be overruled.

*Judgment on the verdict.*