Sullivan,  }
Dec. 5, 1905.  }

## STATE *v.* CORRON & *a.*

An action may be maintained on the bond of a licensed dealer in intoxicating liquor, without proof of his prior conviction in a criminal proceeding upon the charge alleged as a breach of the condition.

In an action to enforce payment of the bond of a licensed dealer in liquor, his prior acquittal upon an indictment charging the commission of the same offence as that alleged as a breach of the condition does not constitute a defence and is not admissible in evidence.

The object of the bond required to be given by a licensed dealer in liquor is security for the payment of damages occasioned to the public by a violation of law ; and the practical impossibility of accurately estimating the pecuniary injury resulting from a breach of the condition is conclusive evidence that the sum named is to be treated as liquidated damages, in the absence of any suggestion that it was intended as security for the payment of a lesser amount.

The sureties on a bond conditioned upon a compliance with a statute are concluded equally with the principal obligor by a judgment or decree which estops him to deny his non-compliance.

A finding that a licensee has violated the provisions of the act to regulate the traffic in intoxicating liquor, made by the state board of license commissioners, after due notice and hearing, in a proceeding for the revocation of the license, is a judicial determination of the fact, and is conclusive evidence of such violation in a subsequent suit to enforce payment of a bond given by the licensee and conditioned upon his constant adherence to the terms of the statute.

A ruling that a decision of the state board of license commissioners as to a violation of law by a licensee is conclusive upon that question in a subsequent suit to enforce payment of his bond is not open to the objection that the obligor is thereby deprived of his constitutional right to a trial by jury in a matter relating to property.

The non-existence of a right of appeal from the state board of license commissioners is not material upon the question of the conclusive effect of their decision in a matter judicially determined by them.

The remedy of a party prejudiced by an agreed case is an application to the superior court for relief from the agreement and a trial of the questions of fact.

A revocation of a liquor license by the state board of license commissioners, without reasonable notice and hearing, is not a judicial act, but an exercise of administrative power.

DEBT, on a bond. In August, 1903, the defendant Corron applied to the state board of license commissioners for a license of the first class, to be exercised in Newport. The license was

granted upon the filing of the bond in suit, executed by Corron as principal and the United States Fidelity and Guaranty Company as surety. During the term of the license complaint was made to the license commissioners that Corron had violated the law by selling liquor to an intoxicated person. Upon notice to Corron and hearing, the commissioners found him guilty of the offence charged, revoked and cancelled his license, and made complaint to the county solicitor, who thereupon brought this suit.

At the trial before *Peaslee*, J., at the November term, 1904, of the superior court, there was no evidence of a breach of the condition of the bond, other than the proceedings before the license commissioners. The defendants excepted to the admission of evidence of the action of the commissioners, to the exclusion of evidence other than the commissioners' finding upon the question of Corron's violation of law, and to the denial of their motion for a nonsuit.

At the time of the trial an indictment was pending against Corron upon the charge of which the commissioners found him guilty, on which he has since been tried and acquitted. By agreement of counsel, the question of the competency of the judgment of acquittal upon the issue tried was argued.

*Frank H. Brown*, solicitor, and *Edwin G. Eastman*, attorney-general, for the state.

*George R. Brown*, for Corron.

*Streeter & Hollis*, for the United States Fidelity and Guaranty Company.

1. The case states that the license commissioners found that Corron had violated the law by selling liquor to an intoxicated person and revoked his license, and that "there was no evidence of a breach of the condition of the bond, other than the proceedings before the license commissioners." The question presented may be stated thus: Of what effect is the finding of the license commissioners with respect to an alleged violation of the license law, in an action of debt upon a license bond brought to recover for the same alleged violation of the law? We submit that such a finding has no effect whatever. To give it the conclusive effect accorded it in the superior court, it must be held that the defendants are estopped by the finding of the commissioners to deny that Corron has been guilty of a violation of the law; or to state the same thing in another way, that the finding of the commissioners makes the question of guilt *res judicata*.

The classic definition of the doctrine of estoppel by judgment, or *res judicata*, is that given in *Duchess of Kingston's Case*, 20 How. St. Tr. 335, 358: "The judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar ; or as evidence, conclusive between the same parties upon the same matter directly in question in another court; and the acknowledgment of a court of exclusive jurisdiction directly upon the point is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court."

"In order to work an estoppel and preclude the parties from relitigating questions once adjudicated, the judgment must have been rendered by a legally constituted court. This conclusiveness has, however, sometimes been extended to the decrees of tribunals other than the ordinary public courts of justice." Big. Est. (4th ed.) 7.

It will not be contended by any one that the license commissioners constitute an " ordinary public court of justice." It is conceded that the statute confers upon them certain judicial duties and powers. *Sargent* v. *Little*, 72 N. H. 555. The particular power with which we are concerned in this case is that conferred by section 14, chapter 95, Laws 1903, namely, the power to revoke and cancel licenses, and it is admitted that their action in revoking and cancelling the license in this case is final. This is because Corron " upon accepting the license impliedly agreed that they might revoke and cancel it upon the happening of certain contingencies." *Parrent* v. *Little*, 72 N. H. 566. In other words, Corron's *status* with respect to his rights to sell liquor in this state was conclusively determined by the tribunal upon whom the statute conferred jurisdiction to determine that *status*. Before the adjudication Corron was a licensee, after it he was not, just as a successful libellant in a divorce proceeding is a husband or wife before the decree, single after it. Corron's *status* is not an issue in this case, and his *status*, we submit, is the only matter which has become *res judicata*.

In dealing with this subject it is common to distinguish between judgments *in rem* and judgments *in personam*. Big. Est., c. 2. If we adopt this classification, which Mr. Justice *Holmes* has shown is likely to be' misleading, the adjudication revoking and cancelling Corron's license is a judgment *in rem*. *Brigham* v. *Fayerweather*, 140 Mass. 411. Whether it be termed a judgment *in rem*, or be held conclusive upon all the world because Corron agreed that upon the happening of certain contingencies the commissioners might determine his right to continue to hold his license, nothing more can be claimed than that their decision belongs in the same class of cases as a decree entered upon the report

of commissioners appointed to fix the boundaries between towns (*Pitman* v. *Albany*, 34 N. H. 577), decisions of the comptroller of the currency (*Casey* v. *Galli*, 94 U. S. 673), adjudications in admiralty in matters of prize, the condemnation and acquittal of goods in the exchequer, decrees establishing pedigree, decrees in matters of marriage and divorce, and the like.   Big. Est., *cc.* 4, 5. Such judgments are acts of the sovereign power, and their effect cannot be disputed collaterally.   *Brigham* v. *Fayerweather, supra.* But it is the adjudication itself, and not the findings of fact upon which it proceeds, which is thus conclusively determined.  " Probably only judgments in prize cases are conclusive *inter omnes* in regard to the findings and grounds of decision."   Big. Est. 14. Applying this principle to the present case, it is the fact of the revocation of the license which has been determined—not the finding of the fact that Corron has violated the law.

 " If a competent court declares a vessel forfeited, or orders it sold free of all claims, or divorces a couple, or establishes a will, . . .   a paramount title is passed, the couple is divorced, the will is established, as against all the world, whether parties or not, because the sovereign has said that it shall be so.  . . .   But the same is true when the judgment is that A recover a debt of B. The public force is pledged to collect the debt from B, and no one within the jurisdiction can oppose it.   And it does not follow in the former case any more than in the latter, nor is it true, that the judgment, because conclusive on all the world in what we may call its legislative effect, is equally conclusive upon all as an adjudication of the facts upon which it is grounded.   On the contrary, those judgments, such as sentences of prize courts, to which the greatest effect has been given in collateral proceedings, are said to be conclusive evidence of the facts upon which they proceed only against parties who are entitled to be heard before they were rendered.   . . .   We may lay on one side, then, any argument based on the misleading expression that all the world are parties to a proceeding *in rem*.   This does not mean that all· the world are entitled to be heard ; and as strangers in interest are not entitled to be heard, there is no reason why they should be bound by the findings of fact, although bound to admit the title or *status* which the judgment establishes."   *Brigham* v. *Fayerweather, supra.*   It was accordingly held that a decree of the probate court admitting a will to probate is not admissible on a bill in equity as evidence of the testator's mental capacity at the time the will was executed, against one not a party to the proceedings in the probate court.

No authoritative case can be found excepting those involving judgments of courts of admiralty condemning a ship as a prize,

and the like, wherein it has been held that findings of fact upon which a judgment is based are conclusive against any one not a party to the proceedings. The doctrine as to the sentence of prize courts is said to rest on " the propriety of leaving the cognizance of prize questions exclusively to courts of prize jurisdiction ; the very great inconvenience, amounting nearly to an impossibility, of fully investigating such cases in a court of common law ; and the impropriety of revising the decisions of the maritime courts of other nations, whose jurisdiction is co-ordinate throughout the world." *The Mary,* 9 Cranch 126, 145. Certainly no such reasons as those given in the case cited are present here ; and in the absence of precedent, it is difficult to suggest any ground for holding that a finding of fact by the license commissioners should be held to conclude any one, much less one not a party to the proceeding. The surety is not entitled to notice in any case, nor are licensees of the first class. As a matter of fact, Corron had only two days' notice.

2. It may be contended that by adopting the language used in the statute the legislature intended to make the license commissioners the sole judges of the question of the violation of the law for the purpose of fixing the liability on the bond, and that by giving the bond the parties thereto have voluntarily waived a determination of that question by any other tribunal. To adopt this contention would be to hold, in effect, that the defendants by giving the bond "impliedly agreed" (to adopt the language of the court in *Parrent* v. *Little, supra*) that the commissioners might declare the bond forfeited "upon the happening of certain contingencies," and so waived what would otherwise be a constitutional right to a trial by jury. While the bond is conditioned simply upon constant adherence to the terms of the license and the provisions of the license act, it is a general principle that where a bond is given in pursuance of a statute, the provisions of the statute are, in effect, a part of the bond. *McCluskey* v. *Cromwell,* 11 N. Y. 593 ; *People* v. *Chalmers,* 60 N. Y. 154. It is further conceded that subjects may waive their constitutional right to a trial by jury ; but we submit that the statute in question does not contemplate any such waiver.

It is to be noted that the act expressly provides that the bond is recoverable in an action of debt. This is an ancient civil action cognizable by the superior court "according to the course of the common law." P. S., *c.* 204, *s.* 4. The issue of the breach of the bond must be determined upon legal proof unless the statute expressly makes some other kind of evidence admissible ; and we search the act in vain for one word indicating an intention to make the trial of this action differ in any respect from other

actions on bonds of a similar nature. Then, too, there is not one word in the act indicating that the legislature intended to give any effect to the finding of the commissioners beyond that necessarily involved in the exercise of the jurisdiction expressly conferred upon them, namely, the revoking and cancelling of licenses. In fact, the language of the court in *Parrent* v. *Little, supra,* seems to us to be decisive of this whole question.

It is to be noted that sureties and licensees of the first class are not entitled to notice prior to the revocation and cancellation of licenses. This is a reasonable, though somewhat drastic, provision, because the public good may require that the sale of liquor under certain circumstances should be summarily stopped. There is, however, no reason why the question of liability on the bond should be thus speedily determined, and the legislature has left that matter to the courts without one word to indicate an intention to modify the usual course of procedure or proof. It is not to be presumed that the legislature intended to require persons signing license bonds to subject themselves to a summary determination of their rights and liabilities without an opportunity to be heard. Such an intent, involving the relinquishment of the constitutional right to a judicial trial, is not to be imputed to the legislature in the absence of language clearly indicating a purpose to take away that right. We do not find one word indicating such a purpose. Clearly, the court should not give to the statute a construction to the effect that what would otherwise be a constitutional right has been waived, in the absence of language plainly indicating such a purpose. The defendants should not be held to have waived the right to a judicial trial, when there is no language in the statute calculated even to put them on their guard.

If the legislature had intended to make the finding of the commissioners conclusive, it could have stated that intention in plain terms. It could have required a bond conditioned upon preserving the license, or declared the finding involved in revoking and cancelling the license conclusive in an action on the bond. It did neither of these things, and the only possible inference to be drawn is that it intended to leave the determination of the question of a breach of the condition of the bond to the court, unaffected by the action of the commissioners.

3. If it be held that evidence of the finding of the commissioners, although not conclusive, is competent for any purpose, the defendants are entitled to introduce evidence to prove that Corron is not guilty of a violation of the law. We believe the finding of the commissioners upon the question of guilt is inadmissible for any purpose, that it is not *res judicata*, and that it does not estop

the defendants to deny the violation of the law. The finding is conclusive, or nothing. If, however, it is admissible and not conclusive, the right of the defendants to a new trial will hardly be disputed.

4. The acquittal of Corron upon the trial of an indictment charging him with the same sale which forms the basis for this suit is conclusive in this action. It is undoubtedly true that a conviction or an acquittal in a criminal prosecution is usually not evidence in a civil action growing out of the same transaction. The manifest reason for this is, that the parties to a criminal prosecution and those in a civil suit are usually necessarily different, the state being the plaintiff in the former and an individual in the latter. Where, however, the parties are the same in the two actions, the reason for the rule is taken away, and the rule itself is no longer applicable. 2 Black Judg. (2d ed.), s. 529.

The leading case upon this subject, and one whose authority has never been questioned, is that of *Coffey* v. *United States*, 116 U. S. 436. That was an action *in rem* to enforce a forfeiture of property under the United States internal revenue laws. Coffey had been previously tried upon an indictment covering the same acts set forth in the information in this suit, and acquitted. It was held that an acquittal was a bar to the suit. *United States* v. *Chouteau*, 102 U. S. 603, is very much in point. That was an action upon a distiller's bond against the principal and sureties, and was founded upon a violation of the internal revenue laws. The principal was indicted for the same violation of law for which a recovery on the bond was claimed, and the criminal prosecution was compromised. The court say: " The compromise pleaded must operate for the protection of the distiller against subsequent proceedings as fully as a former conviction or acquittal. He has been punished in the amount paid upon a settlement for the offence with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offence. To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless." The court thus assumes that a former acquittal would be a bar to an action on the bond and this is the very basis of the decision.

The only possible ground for holding that Corron's acquittal is not an absolute bar to this suit is that the verdict of the jury means only that Corron has not been proved guilty beyond a reasonable doubt; but this suggestion is conclusively answered by the language of the court in the two cases above cited. It would seem that the acquittal of its own force precludes the right of the

state to recover upon the bond, and that judgment should be entered for the defendants.

*Frink, Marvin & Batchelder*, for the Fidelity and Deposit Company of Maryland.

1. By section 14, chapter 95, Laws 1903, the license commissioners are empowered, after notice to the holder and a hearing, to revoke and cancel any license, if they find that any provision of the act has been violated by the holder at the place designated in the license. This section makes no mention of the bond; and nowhere, throughout the whole act, is there any express provision that the commissioners' finding in revoking the license has any bearing on the question of whether the bond is forfeited. Section 28 provides that whoever violates any provision of the act " shall, unless otherwise expressly provided, be punished by a fine of one hundred dollars, the forfeiture of his license and the bond thereon, and by imprisonment for not more than sixty days." Section 9 provides that the bond shall be recoverable in an action of debt, to be brought by county solicitors upon complaint of the board.

Construing these sections in the light of section 4, chapter 204, Public Statutes, which defines the jurisdiction of the supreme court at the trial terms (now the superior court), there can be no question but that the superior court is the tribunal having jurisdiction of the proceeding to forfeit the bond, and of the punishment for violating the act. The revoking of the license is expressly placed in the hands of the commissioners; and the lack of express provision as to the procedure to enforce the other penalties shows that they were intended to fall within the general provision placing such matters within the jurisdiction of the superior court. Such being the case, why should not the usual method of procedure in that court be followed? Why should not Corron and his surety have their day in court, and be heard before being condemned to pay the amount of this bond? The legislature has placed this action within the jurisdiction of the superior court, and in the absence of express direction, its intention must have been that it should be treated there as other actions are, and tried on its merits. *State v. Gerry*, 68 N. H. 495, 502. The legislature could not have meant that the surety should be obliged to pay without a chance to be heard, even if we admit that Corron's trial by the board is equivalent to his day in court. There is no provision that the surety shall receive notice, and nobody but the " holder " is entitled to a hearing by the provisions of the act.

On the trial of the indictment against Corron he had a trial by jury on the merits. On what ground can it be said that the legis-

lature intended anything different in the civil action? No such intention is expressed in the act. The forfeiture of the bond and the punishment are prescribed in the same sentence (*s.* 28). The act is silent as to what evidence shall be necessary in either case, and there is not the shadow of a suggestion that the finding of the commissioners in revoking the license shall have any effect whatever in either of the other proceedings. Under these circumstances, there seems no escape from the conclusion that the legislature intended this action and the criminal prosecution to follow the general rule of procedure, and be tried independently of any proceeding by the commissioners, and on their own merits. *Parrent* v. *Little,* 72 N. H. 566.

2. If the ruling at the trial was correct, the defendants are not entitled to a trial by jury. Corron had no jury of his peers before the commissioners to decide the question of his liability, and the ruling in the superior court denies him one there. The surety on the bond has had no hearing at all, unless by the permission of the commissioners at Corron's hearing, as a favor and not as a right.

"In all controversies concerning property and in all suits between two or more persons, except in cases in which it has been heretofore otherwise used and practiced, . . . the parties have a right to a trial by jury." Bill of Rights, *art.* 20. This section has been the subject of careful and elaborate consideration by the court, and it is well settled that by this provision any private individual defendant is guaranteed a jury trial in any case where such was the practice prior to the adoption of the constitution. *Copp* v. *Henniker,* 55 N. H. 179; *King* v. *Hopkins,* 57 N. H. 334; *Wooster* -v. *Plymouth,* 62 N. H. 193; *State* v. *Saunders,* 66 N. H. 39. There has been some difference of opinion as to the test which must be applied to determine in what cases "it has been heretofore otherwise used and practiced"; but in this case it is immaterial whether we apply the rule in *Copp* v. *Henniker,* that it is a question of the actual historical usage in the courts of this state prior to 1784, or that laid down in the later case of *State* v. *Saunders,* that the usage in which the historical right is to be found is not merely that of an American province and state, but also that of the race among whom this trial was an old institution when they brought it to the New World.

The action of debt is one of the oldest of common-law forms, preceding even the statute of Westminster (13 Edw. I, *c.* 24) by which the action on the case was created. There is no need of citation of authorities to prove that at common law the general issue in debt was to be tried by a jury. That such was the proceeding is well settled.

Examining the historical procedure in New Hampshire, we find that in the laws passed in 1679, soon after President John Cutt took office, it is provided: " That all Trials, whether Capital, or Criminal, or between man & man, both respecting maritime affairs, as wel as others, be tried by a jury of Twelv good & lawful men, according to the commendable custom of England; Except the Parties concerned to refer it to the Bench; or some express Law doth refer it to their Judgment & Trial, or to the Trial of some other Court, where Jury is not; In which case any party aggreeved may appeal; and shal have Trial by a Jury." 1 N. H. Prov. Laws (Batch. ed.), *p.* 25. The act establishing the courts of the province, passed March 3, 1686–7, provided for the trial of all issues of fact by a jury. *Ib.* 194. In 1692, it was enacted that either party might have a jury on a trial before a justice of the peace, but at his own expense, and that no person's right or property should be determined unless the fact be found by the verdict of twelve men of the neighborhood. *Ib.* 542, 543. In 1686, it was ordered " That the Courts of Pleas in each County be Impowred to Chancery Peenal bonds where the forfeitures were found by Juries." *Ib.* 126. In the act of 1699, revising the establishment of the provincial courts, it is provided: "The Justices, . . . where the forfeiture or penalty of any Obligation with a Condition underwritten, or a penalty annexed to any Articles, Agreement, Covenants, Contracts, Charter party, or other Specialty . . . shall be found by Verdict of Jury, or by default, . . . are hereby Impowred . . . to Chancer such Forfeiture, and to enter up Judgment for the just Debt and Damages." *Ib.* 665. These provisions show clearly that the action of debt on a bond was tried before a jury.

The procedure of chancering a bond to find the amount of the damages when the condition was broken seems to have been the custom during the early period of our government, and presumably rests on these statutes, although the courts might have so done in the absence of such provisions. In *Parker* v. *Jack* (September term, 1785, superior court in Rockingham County), the defendant confessed the forfeiture of the bond and prayed to be heard in chancery, which being granted judgment was given for the sum of ten pounds. Ms. Records, *vol.* K, *p.* 70. See, also, *Ib., vol.* K, *pp.* 263, 273, 364, 367, 428; *vol.* L., *p.* 84. Examining these records from March, 1777, to the time of the adoption of the constitution in 1784, we find two cases of debt on a bond, both of which were tried by jury. *Clark* v. *Langdon, vol.* I, *p.* 38; *Clark* v. *Smith, vol.* I, *p.* 87. *Clark* v. *Langdon* resembles most the present case, in that it was a suit by John Langdon on a bond running to him in his official capacity as speaker of the

house of representatives, and was brought "for the use of said state." Langdon had judgment in the lower court, but in the superior court the jury found for the appellants, and the judgment was reversed. In *Clark* v. *Smith* there was a jury trial in the inferior court and verdict for the plaintiff Smith. On appeal by Clark, another jury trial was had in the superior court, and verdict for the appellee.

Most, if not all, of these cases were originally entered in the court of common pleas, and brought up on appeal. The judgment of the inferior court seems to have had no validity or effect in face of an appeal, and each case was tried *de novo* in the upper court on its merits. It was probably this fact which led to the not uncommon practice of filing in the lower court a bad or frivolous plea, reserving right to waive it, and appealing after judgment had been entered for the plaintiff on demurrer. The following pleas are instances: The defendant "is not able to pay this debt"; "was hardly used in the cause of Emanuel Elam" (another suit at same term); "is unable to attend to the action at present"; "plaintiff is ungenerous in suing him." Ms. Records, *vol.* K, *p.* 147; *vol.* L, *pp.* 84, 116, 193.

3. This case is not within the principle of those which hold that the defendant has waived his right to jury trial. *Piper* v. *Clark*, 18 N. H. 415; *Parker* v. *Burns*, 57 N. H. 602; *Deverson* v. *Railroad*, 58 N. H. 129. These cases depend on the fact that the party has voluntarily assumed a position inconsistent with claiming a right of jury trial, or has expressly waived it. That the present defendants have not done. They entered into a certain contract, and agreed to pay the penal sum of the bond if Corron violated the license law. They never agreed that the license commissioners should be the tribunal to decide if the bond is forfeited, nor have they asked that the question be referred to the commissioners, as to a referee. By signing the bond, they agreed to what is usually implied by such signature: that this bond might be sued in the superior court, as the statute provides, and as is the regular course, and that they might be ·adjudged liable after the trial which every obligor is entitled to by the invariable custom of our jurisprudence and the express provision of our constitution—a trial by jury, not merely to determine the execution of the bond, but on every fact and all facts on which the condition of the bond is expressly based. More than this they have not agreed to, nor have they taken any position inconsistent with claiming their constitutional right. On the contrary, they have constantly claimed that right both at the trial and here. If the license law contained an express provision that the obligors on the bond should not be entitled to a jury trial, the case might be brought within the rule of the cases cited; but it contains no

such provision, and to claim a jury trial is in no way inconsistent with any previous attitude of the defendants.

YOUNG, J.  The right to sell intoxicating liquor is neither a "natural, essential, and inherent" inalienable right, nor a constitutional one.   The state may absolutely forbid or may license such sale.   The license, when granted, is not a contract or vested right, but a mere permission which may be revoked at any time. *State* v. *Holmes*, 38 N. H. 225.   The manner in which such permission may be recalled, and the consequences attending thereon, are mere limitations upon the privilege.   The statute confers a privilege which the citizen is at liberty to accept by becoming a licensee, or not, as he pleases.   Having accepted the privilege, he cannot object to any conditions which have been attached thereto by a grantor with power to entirely withhold the privilege.  *Dow* v. *Electric Co.*, 68 N. H. 59, 60 ; *S. C.*, 166 U. S. 489, 490.   The only question open, therefore, is : What conditions and limitations did the legislature intend should attach to the permission given ?   If the fair inference from the language of the act is that the legislature intended that the finding of certain facts by the commissioners, in a proceeding to cancel and revoke the license in the manner stated in the case, should conclusively establish the same facts when in issue on the bond, and that a judgment of acquittal in a criminal proceeding should not have that effect, no further question remains to be considered.   The question, therefore, is merely what was meant by the language of the act, read in the light of the surrounding circumstances and existing law.   *State* v. *Gerry*, 68 N. H. 495, 502 ; *Kendall* v. *Green*, 67 N. H. 557.

The record does not contain the condition of the bond.   It is therefore assumed that the bond complied with the statute ; that it was a joint bond, in the language of the act "conditioned upon constant adherence to the terms of said license and the provisions of this act."   Laws 1903, *c.* 95, *s.* 8, *cl.* 9.   The only question presented at the trial was as to the competency and conclusive force in this suit of the action of the commissioners in revoking and cancelling Corron's license.   The competency of the fact of his acquittal upon an indictment charging the violation of law of which the commissioners found him guilty has also been argued by agreement of counsel.   It is convenient first to consider the connection, if any, between the criminal proceedings authorized by the act and cases like the present.   The defendants contend (1) that this suit cannot be maintained because Corron has not been convicted of the charge alleged as a breach of the bond, and (2) that his acquittal upon an indictment therefor is an answer to this suit.

Upon the first contention, the language of the section of the act referred to above seems conclusive. The bond is " recoverable in an action of debt to be brought by county solicitors upon complaint of said board " of license commissioners. It is manifest that the commissioners may make complaint, in the absence of prior action by prosecuting officers of the state. Upon such complaint, it is the duty of county solicitors to bring the suit. If it was the intention that the suit should be brought only after a forfeiture of the bond upon conviction, or not until after an adjudication in a criminal proceeding of facts constituting a breach of the bond, there would be no occasion for a complaint by any person to inform the solicitor or set him in motion. The criminal proceedings in his charge would give him full information. Section 10, chapter 117, Laws 1905, prescribes the manner of bringing actions for the enforcement of bonds given by licensees and for the recovery of sums due the state on account of the forfeiture of such bonds. As a declaratory statute, these provisions are evidence of the legislative understanding that under the act of 1903 suits were maintainable upon such bonds without the prior conviction of the licensee. The liquor tax law of New York (N. Y. Laws 1897, *c.* 312, *ss.* 17, 18), which is claimed to have been the model upon which the New Hampshire statute was drafted, permits the maintenance of a suit without prior conviction of the licensee. *Lyman* v. *Kurtz*, 166 N. Y. 274, 276. The New York statute contains an express provision to that effect, doubtless considered unnecessary in the New Hampshire statute because of the omission of the condition for the payment of fines and costs, contained in the New York bond.

By section 14 of the act, a license after being issued may be revoked and cancelled by the commissioners " if any provision of this act is violated at the place designated in the said license by the holder of the same, or by his agents, servants, or any person whomsoever in charge of said premises." One of the terms of the license, either expressed therein or understood from the language of the act, was, therefore, that the provisions of the act should not be violated at the place designated in the license, by the holder himself or by any of the persons named above. Such violation by any of these persons would constitute a breach of the bond conditioned upon constant adherence to the terms of the license. The licensee could not be convicted of crime because of a violation of the act by his servant not authorized or ratified by him. *State* v. *Wiggin*, 20 N. H. 449; *State* v. *Bonney*, 39 N. H. 206; *Lord Melville's Trial*, 29 How. St. Tr. 746; 1 Wig. Ev. 12. Liability on the bond may exist without criminal liability on the part of the licensee; and to hold that a licensee could not be held

on his bond unless previously convicted upon indictment or information, would be to defeat the plain intent of the act. The defendants' argument is founded upon section 28 of the act, which is: "The state board of license commissioners are hereby authorized and empowered to prescribe regulations for the conduct of the traffic in liquor under any license of the first class, as they may see fit, and whoever violates any such regulation, or any provision of this act or of his license, whatever its class, shall, unless otherwise expressly provided, be punished by a fine of one hundred dollars, the forfeiture of his license and the bond thereon, and by imprisonment for not more than sixty days. Such licensee shall be disqualified to hold a license for three years after his conviction, and if he is the owner of the licensed premises no license shall be issued to be exercised on the premises described in the license during the residue of the term thereof." The charge against Corron before the commissioners, upon the indictment, and in this case was the sale of liquor to an intoxicated person, forbidden by section 15 of the act. Such sale was a violation of the provisions of the act, punishable under section 28 "unless otherwise expressly provided." Although section 28 is a general provision for punishment for violation both of the regulations of the commissioners and the provisions of the act, the act contains several express punitory provisions, one of which (*s.* 33) covers the present case—the sale of liquor contrary to the provisions of the act—in the following terms: "Whoever, in a city or town wherein the provisions of this act are in force, shall sell or keep for sale liquor contrary to the provisions of this act, shall be punished by a fine of two hundred dollars and by imprisonment for not less than one month nor more than two years." While the provisions of section 28 may seem to be more appropriate for violations of the act by a licensee, the section cannot be extended to cover cases where other provision has been made. So far as the present case is concerned, there is no occasion to give any effect to the language of section 28, because it has no application to the matter in hand.

The defendants' second contention is that the judgment of acquittal upon an indictment against Corron charging the offence alleged as a breach of the bond is an answer to this suit. If the other defendants are privy with Corron, they could take the same advantage of this judgment that Corron could. If the state is bound as against them by the judgment, it would seem to follow that they would be bound by any judgment the state may have obtained against Corron—a proposition which the defendants deny, but which it is not necessary to consider at this point. "As a general rule, a verdict and judgment in a criminal case

. . . cannot be given in evidence in a civil action, to establish the facts on which it was rendered. . . . The same principles render a judgment in a civil action inadmissible evidence in a criminal prosecution." 1 Gr. Ev., *s.* 537. The rule is stated by Greenleaf to be based on three grounds. (1) The same parties are not admissible as witnesses in both cases. This rule has been changed to a considerable extent. The parties are compellable now to testify in a civil case; the respondent may testify in a criminal case, and the defendant can be compelled to testify in a civil case. To make the decision of a court in such a case evidence in a criminal proceeding would be to compel the defendant in the criminal case to be a witness against himself. (2) Lack of mutuality of the parties. This rule does not apply where the state is plaintiff in both proceedings. (3) The proof required is generally different in the two cases. To this there is an exception in some jurisdictions, that in actions strictly penal the rule is the same as in criminal cases. If in such jurisdictions the rule that the defendant cannot be compelled to be a witness against himself is enforced, there would be no logical objection, where the parties are the same, to the reciprocal application of the doctrine of *res judicata* or estoppel by verdict between civil and criminal cases; for the rule applies in criminal as well as in civil cases. *Commonwealth* v. *Ellis*, 160 Mass. 165; *Commonwealth* v. *Feldman*, 131 Mass. 588; *Commonwealth* v. *Evans*, 101 Mass. 25; *Commonwealth* v. *Austin*, 97 Mass. 595; *Queen* v. *Haughton*, 1 E. & B. 501. The cases cited were all criminal proceedings, both those in which the adjudication was made and those in which it was offered as evidence. Where penal proceedings, though civil in form, are in procedure treated as criminal actions, there would seem to be no difficulty in the application of the principles of *res judicata ;* but where the form of the proceeding and not its nature controls (*State* v. *McConnell*, 70 N. H. 158), there appears to be insurmountable difficulties in the application of estoppel by verdict between actions civil and criminal. But however that may be, it is only where the object of both proceedings is punishment that any well considered authorities are to be found holding that a judgment in one case is an estoppel in the other. *Coffey* v. *United States*, 116 U. S. 436. If the purpose of the civil suit is compensation and not punishment, the principle advanced in *Coffey* v. *United States* does not apply. *Stone* v. *United States*, 167 U. S. 178; *United States* v. *Schneider*, 35 Fed. Rep. 107; *United States* v. *Jaedicke*, 73 Fed. Rep. 100; *Britton* v. *State*, 77 Ala. 202. If the purpose of the civil action granted the state was the punishment of offenders, it is a penal statute; but if the purpose was the recovery by the state of damages caused it by the

licensee's wrongdoing, it is a remedial statute. *Adams* v. *Railroad*, 67 Vt. 76, — 48 Am. St. Rep. 800; *Reed* v. *Northfield*, 13 Pick. 94, 101; *Grace* v. *McElroy*, 1 Allen 563; *Cole* v. *Groves*, 134 Mass. 471; *Gardner* v. *Railroad*, 17 R. I. 790; *Nebraska Nat'l Bank* v. *Walsh*, 68 Ark. 443, — 82 Am. St. Rep. 301; *Huntington* v. *Attrill*, 146 U. S. 657, 667; *Brady* v. *Daly*, 175 U. S. 148, 155.

The material inquiry, therefore, is: What was the legislative purpose in authorizing the civil action granted the state? Did the legislature intend thereby to provide for the infliction of punishment upon the licensee who violated the provisions of the statute and the terms of his license, or did they intend to secure to the state compensation for loss sustained in consequence of such wrongdoing? Usually punishment follows conviction of crime. No one can be convicted of crime except upon proof beyond a reasonable doubt, or even be put upon trial, except for trifling offences, without information, or presentment by a grand jury (*State* v. *Gerry*, 68 N. H. 495, 498), i. e., in a criminal action. The form of the remedy under section 8, clause 9, establishes that the proceeding is civil, not criminal. *State* v. *McConnell*, 70 N. H. 158. Disputed questions of fact are determined by a balance of probabilities. *Hitchcock* v. *Munger*, 15 N. H. 97. Generally, the purpose of an action of this kind " is not the punishment of the defendant in the sense legitimately applicable to the term, but such action is brought to recover the penalty as a fixed sum, by way of indemnity to the public for the injury suffered by reason of the violation of the statute. The effect of the recovery is merely to charge the defendant with pecuniary liability, while a criminal prosecution is had for the purpose of punishment of the accused." *People* v. *Briggs*, 114 N. Y. 56, 65.

For nearly fifty years the policy of the state, as evidenced by its legislation, was the suppression of intemperance by the absolute prohibition of the sale of intoxicating liquor for use as a beverage. Such was the avowed purpose of the act of 1855, which was the original stock upon which all subsequent legislation was engrafted. Laws 1855, c. 1658; Laws 1858, c. 2080; G. S., c. 99; G. L., c. 109; P. S., c. 112; Laws 1895, c. 87; Laws 1899, c. 71. There is no foundation for the conclusion that the legislature intended by the legislation of 1903 to change the policy of the state as to the suppression of intemperance, for there is no evidence from which it can be found that intemperance had become to be considered less of a menace to the public welfare than it was thought to be in 1855, or that it had been discovered that the evils resulting therefrom to the state are now less serious. The law of 1903 appears to constitute a change of method—not of principle. For

nearly half a century the state sought to prevent the intemperate use of intoxicating liquor as a beverage by stopping by law the supply of liquor by sale for that purpose. The theory of the law was perfect: if liquors could not be obtained by purchase for such use, the amount which could otherwise be secured would be inconsiderable, and the use to any extent of such liquor so as to produce intemperance with its attendant evils would cease. But the sentiment of the state was not entirely uniform in support of the prohibitory principle. It was claimed that is some sections of the state the law was not and could not be enforced, and that the practical result of the law was in many places not prohibition, but unrestricted sale—the worst form of the evil. Advocates of a change were not wanting, who claimed that regulation of the traffic which could not be successfully stopped would better subserve the general governmental purpose of the suppression of intemperance. This sentiment found effect in the license law of 1903, with its provisions that the change should be in force only where adopted by vote of the local community (*s.* 31).

One great argument against the unrestricted sale of liquor, or its sale at all, is that its use directly causes pauperism and crime, thereby increasing the necessary expenditure of the state for the maintenance of police, almshouses, and jails. Advocates of the prohibitory principle claim that it is impossible to so regulate the sale as to prevent additional expense to the taxpayers as the inevitable result of any sale. If the legislature were influenced at all by this argument, it would naturally be expected that some measures would be found in the act to save the taxpayers harmless from such additional burden. We should expect to find the sale of liquor permitted under such restrictions only as would be likely to diminish the probability of the legal sale resulting in intemperance. Many such are found in the act. See *ss.* 14, 15, 16, 17, 19. One most obviously for this purpose, which forbids the sale to a person in a state of intoxication, is the foundation of this controversy. The claim of increased expense to the taxpayers is also apparently sought to be answered by the division of the sums received from license fees between counties and towns, the municipal agencies upon which the expense of supporting paupers and criminals and providing police administration is mainly thrown. It is clear that one part of the legislative purpose in these provisions was to compensate the state for any increased expenditure which might become necessary because of the restricted sale permitted by the act. If there was a possibility that the sale as permitted might cause expense to the state, there was great probability that sales in violation of the restrictions imposed would do so. Nothing would be more apt to promote intemperance, with its

attendant evils and expense to the state, than the sale of intoxi-
cating liquor to any person already in a state of intoxication from
its use, or to an habitual drunkard, or "in case of riot or great
public excitement."

In view of the general provisions of the act above referred to, it
would be reasonable to expect to find therein some provision by
which the expense so occasioned should be met, not by the tax-
payers, but by the person responsible therefor, who alone profited
by such violation.    Where there is probability that one who wishes
permission to engage in a particular enterprise may, if permitted
to proceed, do damage to another, a bond to respond in damages
is usually required as a condition of granting the desired permis-
sion.    If the legislature, having determined what ought to be paid
as a license fee to insure the state against loss from the sale of
liquor in the manner permitted, desired to further protect the state
against loss from sales beyond those for which permission was
granted, the natural method of securing such protection would be
to require a bond enforceable in a civil action.    That such course
was pursued is evidence that by the civil action compensation, and
not punishment, was intended.    The bond required by the liquor-
tax law of New York, before referred to, includes as one of its
conditions the payment of all fines and penalties imposed there-
under.    The law of Massachusetts (R. L., c. 100, s. 42) makes the
payment of fines incurred by a violation of the law one of the
conditions of the bond.    The omission of these provisions from
the New Hampshire statute must have been intentional, if these
statutes, as claimed, furnished a guide for the drafting of our
statute.    An intent to avoid inserting anything tending to estab-
lish a punitive purpose in the civil action is fairly inferable from
such omission.    The collection of fines and costs in criminal pro-
ceedings is usually enforced by imprisonment until the sentence of
the court is performed.    If the object of the law were to enforce
payment of such fines and costs, we should expect to find the pur-
pose declared in express language, as it is in the New York and
Massachusetts statutes.    The state sustains the same injury when
liquor is sold in a licensed place so as specially to promote intem-
perance, whether it is so sold by the licensee's direction or in vio-
lation of his commands.    The liability on the bond exists in either
case, as has already been seen, and in the latter case can be
enforced only by a civil suit.    If the purpose of the legislature
was to secure compensation to the state, there is good reason why
the licensee should be held by the bond to his civil responsibility
for the acts of his servants while in his employment.    There is no
good reason why he should be punished for the unauthorized acts
of others, even if they are his servants.    It is not probable that

the legislature used the language of the act in disregard of the familiar distinction between the civil and criminal responsibility of a master for the acts of his servants, and intended to make the unauthorized acts of the servant the crime of the master. If they could legally do so, such intent cannot be found from language importing merely security for the master's civil liability for the acts of his servants.

It is plain that the opportunity to promote intemperance and to cause expense to the state by the increase of pauperism and crime by the sale of liquor would vary greatly in different parts of the state, and would be greatest in the most thickly settled communities. Accordingly, the license fees prescribed by the act are graded by the population of the towns and cities (s. 7). The amount of the bond required is determined by the amount of the license fee, being at least double the amount of the fee in all cases (s. 8, cl. 9). If the bond is punishment, then a licensee's violation of the act is an offence punishable by different penalties according to the population of the town or city in which the offence is committed. As to the first, sixth, and eighth classes, the commissioners fix the fee and, as a result, the amount of the bond. If the legislature has power to make the violation of a general law punishable by a fine or penalty of different amounts in different parts of the state and of different amounts in the same place according to the discretion of another body,—questions not now necessary to decide,—such purpose cannot be inferred from language fairly importing merely an intent to secure the state against loss naturally and probably varying as the amount of the bond is made to vary. Section 10 of the original act provides that all fees collected and forfeitures incurred under the act shall be paid to the treasurer of the board and by him paid over, one half to the city or town where the license was granted and one half to the county in which such town is located. It would seem to be clear from this language that the proceeds of suits for the collection of defaulted bonds were to be disposed of in the same way as the license fees, and were understood to subserve the same purpose. If doubt could exist, it is settled by section 10, chapter 117, Laws 1905, which distinctly provides that all sums of money collected under the bonds required by the license law "shall be paid to the treasurer of the state board of license commissioners, to be accounted for in the same manner as money paid for license fees." This section, as a declaratory statute, furnishes evidence of the legislative understanding that the funds arising from fees and from the bonds were intended to subserve the same purpose —the protection of the state from loss by the sale of liquor.

The only evidence which tends to controvert the conclusion

that the bond was intended to secure compensation, and not to inflict punishment, is the tendency that liability under such a bond would have to secure obedience to the law, and the probability that this tendency may have had some weight in inducing the legislature to give the state both the civil remedy of section 28 and the criminal remedy found in several sections. But the mere fact that a liability tends to secure obedience to law does not render such liability criminal, or its enforcement a punishment. By section 27, a civil liability to third persons is established under certain circumstances for sales in violation of the act; but it could not be contended that the enforcement of such liability was the infliction of punishment. Contractors with the state and state officials are required to give bonds for the due performance of their contracts or the faithful performance of the duties of their offices. These bonds tend to secure the performance of the contracts and the official duties to which they relate; but it could not be contended that their purpose was punishment of the obligors for failure to perform their contractual or official duties. The usual purpose of such bonds is compensation or security. No sufficient reason appears for a different conclusion as to the bond in suit. If the fact that by sections 21 and 28 provision is made for the forfeiture of the bond, as the result of criminal proceedings under those sections, has any tendency to show that as to such violations of law the state's remedy should be criminal rather than civil, or if in such cases an election to pursue one method is a bar to a subsequent procedure by the other, these questions need not now be discussed, because, as has already been seen, they have no application to the present case. Upon all the competent evidence, it appears more probable that the purpose of the civil action now before the court was compensation and not punishment. It follows, therefore, that the prior conviction of the licensee is not essential to the maintenance of a suit on the bond, and that his previous acquittal is not a defence.

Corron's contract, as evidenced by his bond, was that he would constantly adhere to the terms of his license and the provisions of the act (s. 8, cl. 9). One of these provisions forbade the sale to intoxicated persons. Hence, he agreed that he would not sell to such persons and, as the bond was intended to secure to the state the damages sustained by it if he did, that if he did so sell, he would pay the state the damages thereby occasioned to it. Whether the sum named in a bond is to be treated as a penalty or as liquidated damages is a question of intent, to be ascertained from the language of the instrument and the circumstances of the parties. The difficulty of ascertaining accurately the amount of damages arising to the obligee upon a breach of the condition of

the bond by the obligor is evidence sufficient, in the absence of other evidence, to establish that the parties intended the sum named in the bond should be treated as liquidated damages. *Hurd* v. *Dunsmore*, 63 N. H. 171, 173; *Houghton* v. *Pattee*, 58 N. H. 326; *Davis* v. *Gillett*, 52 N. H. 126, 128, 129; *Philbrick* v. *Buxton*, 40 N. H. 384. That it would be practically impossible to ascertain the amount of damages sustained by the state through Corron's failure to comply with the condition of the bond, must have been apparent to the parties. The sum named therein must therefore be considered as liquidated damages, for there is no suggestion in the act that such sum is security for the payment of any lesser amount. Such is the construction of the similar bond required under the New York law (*Lyman* v. *Perlmutter*, 166 N. Y. 410, 413), although that statute requires as one of the conditions of the bond the payment of fines, penalties, and judgments arising under the law, which, as has been seen, is omitted from the New Hampshire statute.

The other defendants are sureties on Corron's bond. Their contract with the state is not that Corron should comply with the law, but that if the state recovers a judgment against him for a breach of his agreement to comply with its provisions, they will pay the state's damages if Corron does not. Hence, if the state is entitled to a judgment against Corron, it is entitled to one against the other defendants. In short, the agreement of the defendants is collateral security given the state by Corron for the payment of any judgment which may be recovered by it against him, enforceable by the state upon Corron's failure to perform his agreement to pay. If, therefore, the state is entitled to recover of Corron, it is entitled to recover of them. The defendant sureties must defend the issue of his compliance with the law through him, and therefore can make only such defence to the state's case as he can make. *Judge of Probate* v. *Sulloway*, 68 N. H. 511; *Jones* v. *Chase*, 55 N. H. 234; *Towle* v. *Towle*, 46 N. H. 431; *Tracy* v. *Goodwin*, 5 Allen 409; *Dennie* v. *Smith*, 129 Mass. 143. Whatever the rule may have been, it must now be considered as settled that the sureties on a bond to comply with a statute or an order of court are estopped in the same way and to the same extent as the principal obligor by any judgment or decree that estops him to deny that he has failed to comply with the condition of his bond. In so far as *Gookin* v. *Sanborn*, 3 N. H. 491, and *Judge of Probate* v. *Robins*, 5 N. H. 246, may be considered as laying down a different rule, they were overruled in fact, if not in terms, by *Towle* v. *Towle*, 46 N. H. 431, and *Judge of Probate* v. *Sulloway*, 68 N. H. 511.

It is a general rule that a party to a judicial proceeding in which there has been final judgment on the merits cannot be com

pelled by the parties to that action to again litigate any of the matters that were there in issue, if the tribunal had jurisdiction of the parties to and the subject-matter of the suit. *Towns* v. *Nims*, 5 N. H. 259; *King* v. *Chase*, 15 N. H. 9; *Towle* v. *Towle*, 46 N. H. 431; *Hearn* v. *Railroad*, 67 N. H. 320; *Meredith etc. Ass'n* v. *Drill Co.*, 67 N. H. 450; *Gregg* v. *Company*, 69 N. H. 247; *Boston & Maine R. R.* v. *Sargent*, 70 N. H. 299; *MacDonald* v. *Railway*, 71 N. H. 448; *Boston & Maine R. R.* v. *Brackett*, 71 N. H. 494; *Boston & Maine R. R.* v. *Sargent*, 72 N. H. 455; *Duchess of Kingston's Case*, 20 How. St. Tr. 355. The rule depends upon "the fundamental principle of the common law, that a matter once litigated and determined before a court of competent jurisdiction shall not again be controverted before any court." *MacDonald* v. *Railway*, 71 N. H. 448, 452. "The doctrine of the conclusiveness of a judgment rests upon the consideration that the parties have once had a full and fair trial of the matter sought to be drawn a second time in question. One of the elements essential to such a trial is that they have reasonable notice of the question to be tried, and an opportunity to obtain and present all the evidence bearing upon it." *Metcalf* v. *Gilmore*, 63 N. H. 174, 188.

The controversy between Corron and the state was tried between the parties upon notice to Corron, and a finding was made against him. The cancellation of his license "being for cause and after due hearing, the proceedings authorized by the statute are necessarily of a judicial character; and as the mode of procedure is not specified in the act, the substantial principles of the common law, recognized and enforced in proceedings affecting private rights, are to be observed." *Gibbs* v. *Manchester*, ante, pp. 265, 267. It has been repeatedly decided in this state that where an officer or a board is called upon to pass upon evidence and decide, their conclusion cannot be collaterally attacked, and that they are not liable to answer in a suit for their action. The reason given in the cases is that such action is judicial. *Sherburne* v. *Portsmouth*, 72 N. H. 539, 541; *Pittsfield* v. *Exeter*, 69 N. H. 336; *Plymouth* v. *County*, 68 N. H. 361; *Grand Trunk Ry.* v. *Berlin*, 68 N. H. 168; *Spaulding* v. *Groton*, 68 N. H. 77; *Bradley* v. *Laconia*, 66 N. H. 269; *Boody* v. *Watson*, 64 N. H. 162, 166, 198; *Horne* v. *Rochester*, 62 N. H. 347; *Edes* v. *Boardman*, 58 N. H. 580; *Waldron* v. *Berry*, 51 N. H. 136; *Sanborn* v. *Fellows*, 22 N. H. 473, 488, 489. The fact that such officers or boards have also administrative power does not affect the validity of their judicial action. Of such a board the court in Indiana say: "Boards of commissioners, under the law, in the discharge of their duties have, at least, a dual character. In some respects they act judicially, and the law regards them as a court. . . . In other respects they

act in an administrative capacity. . . . When they rightfully exercise their powers as a court, it is settled by the authorities that they are to be treated as such, and their judgments rendered or orders made cannot be collaterally impeached, and the principles of former adjudication are applicable thereto." *Commissioners* v. *Heaston*, 144 Ind. 583, 587,—55 Am. St. Rep. 192.

If the functions of the commissioners in passing upon the question litigated before them by the state and Corron were judicial, the same result must follow as would attend similar action by any judicial body. If it does not, their action is not judicial. That such action by the commissioners is judicial has recently been decided by this court. *Sargent* v. *Little*, 72 N. H. 555 ; *Parrent* v. *Little*, 72 N. H. 566. The rule of *res judicata*, or estoppel by verdict, must therefore apply to the litigation unless such rule is restricted in its application to proceedings according to the course of the common law. Such is not the fact. *Divoll* v. *Atwood*, 41 N. H. 443, 445, 446 ; *White* v. *Coatsworth*, 6 N. Y. 137. " The well-nigh universal rule is, that the judgment of a court of competent jurisdiction, whether it be a court of record or not, upon a point litigated between the parties, is conclusive in all subsequent controversies directly involving the same question. . . . It makes no difference whether that adjudication was in a proceeding according to the course of the common law, or summary in its character. It is quite enough that the question in controversy was submitted to a judicial officer, to be determined in a judicial way ; that the parties and their proofs were heard, and their rights settled by a judicial determination." *Marsteller* v. *Marsteller*, 132 Pa. St. 517,—19 Am. St. Rep. 604. " The rule of *res adjudicata* applies to all judicial determinations, whether made in actions, or in summary or special proceedings, or by judicial officers in matters properly submitted for their determination." *Culross* v. *Gibbons*, 130 N. Y. 447, 454. The state had power to provide for the abrogation of Corron's license without notice or hearing. Such cancellation would have conclusively established in all future proceedings Corron's *status* as a non-licensee. *State* v. *Holmes*, 38 N. H. 225. The fact that further provision was made indicates an intention that the cancellation of a license by the commissioners might be something more than a mere administrative or executive act. " Before any license is revoked or cancelled, the holder shall be entitled to a hearing by said board and to five days previous notice thereof in writing, except that licenses of the first class may be revoked at any time, by said board, with or without notice, in their discretion" (*s.* 14). The section itself recognizes two methods of exercising the power, one judicial because of notice and hearing, the other administrative. The two

methods must be construed in the light of existing law. They differ in that in the first the licensee is entitled to notice and hearing—to an opportunity to be heard and present evidence upon the question litigated. In the present case the action of the commissioners is not attacked in any way. Although they had power to dispose of Corron's right to a first-class licensee by an exercise of administrative power, there is no suggestion that they did so. He had notice, was heard, and litigated before a competent tribunal the matter in issue, and the same results must follow the judicial action in which he took part as ordinarily attend an adjudication of which the parties have notice and in the course of which they are heard. In short, the cancellation of Corron's license was a judicial act, and the commissioners had jurisdiction of the parties to and the subject-matter of the suit. *Parrent* v. *Little*, 72 N. H. 566; *Sargent* v. *Little*, 72 N. H. 555.

Any matter that was "in issue" in that proceeding is *res judicata* so far as the state and Corron are concerned, whether that was a proceeding *in personam* or *in rem;* for in proceedings *in rem* not only the *status* of the person or property in respect to which the inquiry is made becomes *res judicata*, but also, so far as the actual parties to the litigation are concerned, all the matters that were in issue. *Morgan* v. *Dodge*, 44 N. H. 255, 258; *Salem* v. *Railroad*, 98 Mass. 431, 448, 449; *Brigham* v. *Fayerweather*, 140 Mass. 411, 413; Vanfleet Col. At., s. 17. The matters which the plaintiff must allege in his declaration and the defendant deny in his plea are necessarily in issue. A broader definition of "matter in issue" sometimes obtains, but the one given in *King* v. *Chase*, 15 N. H. 9, is most favorable to the defendants and is sufficient for the present inquiry. Under it, the test by which to determine whether Corron's failure to comply with the provisions of the act was a "matter in issue" upon the face of the pleadings, in the proceedings before the commissioners, is to inquire whether the licensee's failure to comply with the provisions of the act is a matter that the state must allege in its complaint, and the licensee deny in his answer, in all proceedings of that kind. That it is, appears from the statute. Section 14 provides that "at any time after a license has been issued,  . . . the same may be revoked and cancelled by said board,  . . . if any provision of this act is violated . . . by the holder of the same." Consequently, a complaint against a licensee under this section and upon this ground must allege that he has failed to comply with the law, in order to authorize the commissioners to act in the matter—in other words, to give them jurisdiction; and unless the licensee denies that allegation in his answer, there is no occasion for a hearing. Whether the licensee has failed to

comply with the law,—not whether he did the particular act which the state charges him with doing, for the purpose of proving that he has failed to comply with the law,—is the matter in issue on the face of the pleadings in all proceedings of that kind. Since Corron's failure to comply with the provisions of the act was a matter in issue in the proceedings before the commissioners and is also in controversy in this action, the court did not err when it admitted the record of that proceeding as conclusively establishing that Corron had failed to comply with the condition of his bond, unless it appears from the act itself that the legislature intended to except matters that are adjudicated by the commissioners from the general rule. The ruling of the court, that Corron and his sureties were estopped to deny that he had failed to comply with the law by the judgment of the commissioners cancelling his license, merely applied the rule as to the evidentiary effect of the matters that were adjudicated at the hearing before the commissioners, that would have been applied to a judgment against him if he had been an administrator (*Judge of Probate* v. *Sulloway*, 68 N. H. 511), the plaintiff in injunction proceedings (*Towle* v. *Towle*, 46 N. H. 431), or a sheriff or constable, and they the sureties on his bond. *Dennie* v. *Smith*, 129 Mass. 143.

If it can be reasonably contended that, because sections 21 and 28 provide that a conviction of the acts denounced in those sections shall work a forfeiture of the bond, while section 14 contains no such provision, the legislature intended that the matters in issue before the commissioners should be again litigated in a suit on the bond, no such inference can be drawn as to violations of the act punishable criminally under section 33, which contains no such provision. The fact that the adjudication in the criminal suit could not be used in the civil suit on the bond would be a sufficient reason for the provision in sections 21 and 28; and that existing law makes the adjudication of the commissioners evidence in the suit on the bond would seem to be a sufficient reason for the omission to refer to it in section 14.

There is no force in the defendants' claim that the ruling of the court deprived them of a jury trial. As the minimum amount for which a licensee's bond can be accepted is $500, the defendants in all actions brought thereon have a right to a jury trial—" a proceeding in which the jury are the judges of the facts, and the court are the judges of the law." *State* v. *Saunders*, 66 N. H. 39, 76. Upon such trial, if desired by the defendants, and not waived by them as in this case, the questions presented here of the admissibility and conclusive effect as evidence of the judgments offered would be, as now, questions of law for the court and not of fact for the jury. The rulings admitting one and

excluding the other, and the direction of a verdict because of the conclusive effect of the state's evidence (*State* v. *Harrington*, 69 N. H. 496), would present the same record that is now here. If under any plea properly pleaded in defence of the suit there was conflict in the evidence, the defendants would have had the right to invoke the judgment of the jury. If at the trial a question of fact that had not been adjudicated between the parties had been presented, upon which there was evidence, the defendants, if they wished, could have had the question determined by a jury. The defendants could have shown that the bond was not their bond, or that it had been paid. The sureties could have made any defence that Corron could, and could have made the defence that the judgment against him offered in evidence was obtained by fraud. *Fall River* v. *Riley*, 140 Mass. 488. No such evidence was offered, and there is no claim that it could have been produced.

It is said that the legislature could not have intended that the commissioners' decision should be evidence in this suit, because thereby the defendants would be deprived of a jury trial in a matter relating to property—meaning that they are thereby deprived of the opportunity to contest before a jury the question of Corron's violation of law. If the bond had been conditioned in terms upon the failure of the commissioners to find Corron guilty of a violation of the law in the exercise of his license, there would have been no question to try by a jury. The use of language which, under existing law and the circumstances of this case, has in practical effect the same meaning cannot be explained away or altered by mere supposition. The right to a jury trial of matters previously adjudicated in a court without a jury did not exist when the constitution was adopted, and cannot now be given except by a legislative act. To overturn a rule so well known and established, express language of the law-making power is required, unless the court is to usurp the province of the legislature. Though a license is technically not property in the sense that it can be taken away by the state without compensation, yet under the statute it is a valuable right and possesses all other characteristics of property. It cannot be obtained except upon payment of the price, or fee, in cash. If the owner dies during the term, the unexpired portion is assets in his estate (*s.* 13). It is assignable by the licensee, or his administrator, to any person capable of holding a license (*s.* 12; Laws 1905, *c.* 49, *s.* 8). It can be taken from the licensee during the year, except for his breach of the conditions upon which it was issued, only by legislative action. Except for the latter possibility, the license is property. It is not probable that such action was thought by the legislature to be so probable that, for that reason, they omitted to

express their intention that the findings of the commissioners upon matters committed to and litigated before them should not be elsewhere conclusive, if such was the intention with which judicial duties were imposed upon them. Neither can any inference be properly drawn from the character or composition of the tribunal. It cannot be inferred that the legislature doubted the competency of the executive to appoint as commissioners persons capable of performing the judicial as well as the other duties assigned to them, or that in so acting the persons appointed will violate legal rules, or that, if they do, the law does not afford a remedy.

It is also said that the lack of an appeal is evidence that the legislature did not intend that the commissioners' decision upon matters litigated before and submitted to them should be conclusive. But the presence or absence of an appeal in matters constitutionally committed to the determination of a tribunal without a jury is not material upon the character of their action as judicial or otherwise. *Manchester* v. *Furnald*, 71 N. H. 153, 158: *Boody* v. *Watson*, 64 N. H. 162, 168; *Doughty* v. *Little*, 61 N. H. 365, 368. " The inquiry as to the conclusiveness of a judgment in a prior suit between the same parties can only be whether the court rendering the judgment—whatever the nature of the question decided, or the value of the matter in dispute—had jurisdiction of the parties and the subject-matter, and whether the question sought to be raised in the subsequent suit was covered by the pleadings and actually determined in the former suit. The existence or non-existence of a right in either party to have the judgment in the prior suit re-examined, upon appeal or writ of error, cannot in any case control this inquiry. . . . Looking at the reasons upon which the rule rests, its operation cannot be restricted to those cases which, after final judgment or decree, may be taken by appeal or writ of error to a court of appellate jurisdiction." *Johnson Co.* v. *Wharton*, 152 U. S. 252, 261; *Dolan* v. *Scott*, 25 Wash. 214.

The general purpose of the act was to secure to the state prompt and efficient remedies for action beyond or without its provisions. These include, in the case of licensees, the cancellation of licenses, the enforcement of the liability on the bond, and proceedings strictly criminal. To attempt by construction to diminish a remedy given by the ordinary meaning of the language used is to do violence to the purpose of the law to permit the sale of liquor only under such restrictions as would prevent as much as possible the increase of intemperance. There was no error in the ruling, in substance, that the evidence required a verdict for the state.

*Exceptions overruled.*

PARSONS, C. J., and WALKER and BINGHAM, JJ., concurred.

CHASE, J., *dissenting.* I agree with the court that the acquittal of Corron in the criminal action is not an answer to this action; but I dissent from that part of the opinion which holds that the decision of the license commissioners revoking Corron's license is competent evidence in this action and conclusively establishes the fact that he did not adhere to the terms of his license and the provisions of the statutes, and that he thereby violated the condition of his bond. It does not seem to me more probable than otherwise that the legislature so intended, and for the following reasons: Because of (1) the absence of a provision in the statute distinctly stating such intent, especially in view of the fact that in sections 21 and 28 the intent is expressly stated that the bond shall be forfeited if the licensee is convicted of the offences therein mentioned; (2) the very limited extent and character of the judicial power granted to the commissioners; (3) the very general and extensive powers and duties of an executive or administrative character delegated to them; (4) the fact that they are custodians of licensees' bonds and are charged by the statute with the executive or administrative duty of putting a bond in suit whenever they think there has been a breach of its condition—a duty that naturally disqualifies them to act as final judges upon the question of breach; (5) the peculiar nature of the subject-matter of their limited jurisdiction, namely, the question of the continuance of the permission conditionally granted to the licensee by the state in the exercise of police power; (6) the wide distinction there is between a question of this kind and a question that concerns property, such as the question in this action; (7) the authority to act in respect to first-class licenses without notice to, or hearing of, the licensee; (8) the absence of authority in the commissioners to decide whether the condition of the bond has been violated in other cases than those in which the license is revoked; (9) the great improbability that the legislature would attempt to provide for the forfeiture of the condition of a licensee's bond, and the consequent charging him and his sureties with damages, without giving them an opportunity to submit the issue involved to a jury for determination; and (10) the absence of any necessity or substantial reason for such course of procedure, —the courts of law being accessible to the state for the enforcement of liability upon a licensee's bond, the same as for the punishment of his offences under the statute.

After the filing of the foregoing opinion, the defendants moved for a rehearing, alleging that no trial was in fact had in the superior court, but that the case transferred was merely an agreed statement of facts; that Corron was notified of the complaint

against him at four o'clock in the afternoon of April 28, 1904, and to appear for a hearing thereon, to be held at eleven o'clock in the forenoon of April 30 ; that the hearing before the commissioners was had at that time, and that Corron had no other notice thereof. In their motion the defendants asked leave to apply for an amendment showing these facts and for a further hearing upon the questions presented, if such amendment should be allowed.

*Streeter & Hollis*, for the motion.

*Per Curiam.* If the reserved case, which purports to be the record of a trial before the court, was an agreed statement of facts, the court has no power to amend it. The only remedy of one wrongfully prejudiced thereby is an application to discharge the case and for a new trial. *Dame* v. *Woods, ante, p.* 391. No insufficiency appears upon the record in this court, and application for relief must be made to the superior court. If the proceeding in the superior court was in substance a trial,—the facts being ascertained from the statements of counsel conceded to be correct, instead of from the testimony of witnesses,—the only amendment that could be made would be to include in the record omitted facts which were before the court at the trial. But the purpose of the suggested amendment may be to introduce into the case facts which were not presented to the court at the trial. This would also be an application for a new trial, and should be addressed to the superior court.

The commissioners had authority to cancel Corron's license by an exercise of administrative power, without notice or hearing. Reasonable notice is essential to a valid adjudication. The statute implies that less than five days is not reasonable. If such notice was not given, and Corron did not waive the insufficiency of the notice, the proceeding before the commissioners was not a judicial trial. If a new trial should be granted, and it should appear that the cancellation of Corron's license was an exercise of administrative instead of judicial power, evidence of the action of the commissioners should be excluded. If at the trial which the case states was had in the superior court this fact appeared, the admission of the evidence of the commissioners' action and the exclusion of all other evidence upon the question of Corron's guilt were both erroneous, and the verdict should be set aside.

As the defendants in their motion do not controvert any matter of law heretofore decided in the case, there is no occasion for further argument at this time. If new questions are raised by further proceedings in the case, they can be considered when presented. That such further proceedings may be had in the supe-

rior court as justice may require, in accordance with the rules of law stated in the opinion, the order previously made is revoked and the entry now is,

*Case discharged.*

All concurred.