Hillsborough, }
Nov. 8, 1922. }

ELIZABETH J. CLOUGH *v.* HARRY G. CLOUGH.

HARRY G. CLOUGH *v.* ELIZABETH J. CLOUGH.

P. S., *c.* 225, *s.* 1, authorizing the taking of "the deposition of any witness in a civil cause," does not apply to proceedings for divorce.

CROSS LIBELS, for divorce. The husband, Harry G. Clough, libelee in the first proceeding and libelant in the second, applied under Rule 128 (78 N. H. 707), for the appointment of a commissioner to take depositions, which was made without notice to the adverse party. The libelant in the first action, Elizabeth J. Clough, was then upon due notice summoned to give her deposition before the magistrate and, upon her refusal to testify, was committed by him. The proceedings include a petition for *habeas corpus* and a motion by Elizabeth to revoke the commission to take depositions. Upon the ground that as matter of law under P. S., *c.* 225, *s.* 1, the court had no power to prevent or interfere with the taking of Mrs. Clough's deposition, the petition and motion were denied by *Allen,* J., who also ordered the taking of the deposition to proceed. To this ruling and order Mrs. Clough excepted. Transferred by *Allen,* J., from the January term, 1922, of the superior court.

*Doyle & Doyle* and *Tuttle, Wyman & Starr (Mr. Wyman* orally), for Elizabeth J. Clough.

*Warren, Howe & Wilson* and *Robert W. Upton (Mr. Upton* orally), for Harry G. Clough.

PARSONS, C. J. "For the purpose of avoiding collusion in libels for divorce and petitions affecting the marriage relation, no evidence contained in depositions will be received unless taken before a commissioner appointed by the court." Rules of Court, No. 128, January, 1918, 78 N. H. 707. The same rule in substance is found in the rules of December, 1859, 38 N. H. 596, and December, 1875, 56 N. H. 596, and appears to have been in force in July, 1849. Bell, Justice and Sheriff (3d. *ed.*), *p.* 145.

In the taking of a deposition all matters may be inquired into which may become competent, *i. e.*, be presented as evidence at the trial, but if the answers to any inquiries cannot be evidence at the trial "it would be the duty of the magistrate, upon objection by the witness, to refuse to put such questions." *Boston & Maine R. R.* v. *State*, 75 N. H. 513, 520. Hence, as under the rule no evidence is receivable at the trial which is contained in depositions taken before a magistrate not specially commissioned by the court, it would be the duty of such a magistrate not to put any questions to an objecting witness and the deposition could not be taken. Such is the plain meaning of the rule, depositions are not to be taken at will by either party.

The hearing of libels for divorce upon oral testimony at the trial terms was authorized by chapter 2, section 1, Laws of 1870. Such is now the universal practice. Since that date, it has been understood by the bar, it is believed, that depositions could not be taken for use in divorce trials except through permission from the court. The application of the libelee for the appointment of a commissioner is evidence of such understanding. At the trial of these motions his counsel contended for the statutory right to take depositions at will without regard to the rule. The orders excepted to were made because it was held they were required by the statute. The only question presented by the case, therefore, is whether the statute relied upon was intended to regulate practice in divorce cases.

The provision is: "The deposition of any witness in a civil cause may be taken and used at the trial unless the adverse party procures him to attend, so that he may be called to testify when the deposition is offered." P. S., *c.* 225, *s.* 1. Other sections of the chapter define the procedure for such taking. The question is whether a libel for divorce is a "civil cause" within the meaning of the term as used in this chapter.

"Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of

civil causes or the punishment of offenses." Const., Part I, *art.* 23. The language makes only two classes of causes, *civil* and those for the punishment of offenses. It is plain the common law division of causes into civil, equitable and ecclesiastical is not here in mind. Because a retrospective law for a divorce operates oppressively and unjustly, such a law is held within the condemnation of the constitution in *Clark* v. *Clark*, 10 N. H. 380. In this case the conclusion is reached that a libel for divorce is a civil cause within the meaning of the term as used in the constitution rather than a proceeding for the punishment of an offense, for which contention authority is cited, although it is admitted the prohibition of the constitution would be equally applicable in either view. But it may be conceded that civil causes as the term is used in the constitution includes libels for divorce. *Dunbarton* v. *Franklin*, 19 N. H. 257, 262. "The same words may have different meanings in different parts of the same act and of course words may be used in a statute in a different sense from that in which they are used in the Constitution." *Lamar* v. *United States*, 240 U. S. 60, 65. "It needs no authority to show that the same phrase may have different meanings in different connections." *American Security Co.* v. *District of Columbia*, 224 U. S. 491, 494. See *Boston & Maine R. R.* v. *Portsmouth, ante,* 7; *Boston & Maine R. R.* v. *Concord,* 78 N. H. 463; *Boston & Maine R. R.* v. *Franklin,* 76 N. H. 459. The meaning of a statute is the intention of the makers and generally this is to be found in the history of legislation upon the subject, the circumstances under which it was enacted and the mischief sought to be remedied. *Stanyan* v. *Peterborough,* 69 N. H. 372. The question is, was the statute enacted in aid of all causes not criminal or was it adopted to supply a defect in common law, as distinguished from equitable, administration? The history and purpose of the statute is to be found in reported cases.

"The occasion for the statute was found in the inability of courts of law to authorize depositions to be taken *de bene esse* and used in trials before them. It was the right of the parties to have all witnesses produced and examined *viva voce* before the jury. If the personal attendance of the witness could not be secured, without the consent of the other party the evidence could not be obtained except by resort to equity and an auxiliary proceeding in aid of the suit at law." *Boston & Maine R. R.* v. *State,* 75 N. H. 513, 518. The principal object of the legislation as stated in *Hayward* v. *Barron,* 38 N. H. 366, was "to dispense with the common law rule

limiting the testimony to be received on trial to that delivered orally upon the stand in the presence of the court and jury." The object of the legislation being to correct a defect in the common law, "civil causes" in the provincial statute of 1701 (1 N. H. Laws, 689) and in the subsequent legislation intended causes within the common law jurisdiction. In equity the power already existed.

All the detail of the procedure in divorce proceedings before 1870, which must now be little more than a tradition in the bar, cannot perhaps be accurately settled. Up to that time libels for divorce were entered at the law term and heard upon depositions. Laws 1855, *c.* 1659, *s.* 11. *Spaulding's Appeal*, 33 N. H. 479, 480. The practice appears to have been at this time, upon entry of the libel, to apply for the appointment of a commissioner to take depositions, whom the rule required personally to examine the witnesses and to report his findings whether there be any collusion between the parties. The depositions when completed were passed to the court and decision made upon the documentary evidence. Rules of Court, Nos. 78–81, 56 N. H. 596.

At an earlier date, cases appear to have been determined upon voluntary affidavits, those of the parties being required. *Smith* v. *Smith*, 12 N. H. 80 (1841); *Quincy* v. *Quincy*, 10 N. H. 272 (1839); *Poor* v. *Poor*, 8 N. H. 307 (1836). The procedure was not according to common law rules; the facts were found by the judges (see cases just cited); the parties testified, *Warner* v. *Warner*, 69 N. H. 137, 138; *Melvin* v. *Melvin*, 58 N. H. 569; *Corson* v. *Corson*, 44 N. H. 587, 588, and the personal attendance of witnesses was not required as at common law trials. *Hayward* v. *Barron*, 38 N. H. 366; the New England invention of default in common law actions (*Hutchinson* v. *Railway*, 73 N. H. 271, 277, 278) has no application. The libelant takes nothing as a legal proposition if the libelee fails to appear. The allegations of the libel must still be proved to the satisfaction of the court. Section 1, *c.* 192, R. S., which gives a right of review in all "civil actions" applies only to those cases in which the course of proceeding is according to the common law and does not apply to divorce proceedings. *Sheafe* v. *Sheafe*, 29 N. H. 269.

In England before the Revolution, all causes concerning marriage and the marital status were tried in the ecclesiastical courts. In a narrow sense these were not common law courts, but they administered the unwritten law of the realm upon those subjects. To ascertain this law as to suits for nullity and other matters relating to the marriage relation recourse must be had to the decisions of

those courts. *Foote* v. *Nickerson,* 70 N. H. 496, 498. But while these courts had jurisdiction to determine the validity of an alleged marriage, to authorize the parties to live apart, and to. provide for the support of the wife by the husband under such a separation, they had no power absolutely to dissolve a marriage legally entered into. A divorce *a vinculo* was obtainable only by act of parliament. 1 Bl. Com. \*441; 3 *Ib.,* \*92–94; *Maynard* v. *Hill,* 125 U. S. 190, 206. In the provincial period and prior to the adoption of the constitution divorces were here granted by the legislature, *Parsons* v. *Parsons,* 9 N. H. 309, 317; *Clark* v. *Clark,* 10 N. H. 380, 389, as in other states. 19 C. J. 17; Cooley, Const. Lim. 110. When the constitution which was adopted in 1783 and went into force in 1784 provided that "all causes of marriage, divorce, and alimony, . . . shall be heard and tried by the superior court, until the legislature shall by law make other provision," Const., Part II, *art.* 75 [76], it conferred a jurisdiction unknown to the law of England. Under this provision it was soon held that the legislature had no power to grant a divorce, and that the granting of one by the court was a judicial proceeding. *Clark* v. *Clark,* 10 N. H. 380. The power of the court was considered to be derived from the legislature acting under this constitutional provision and not from the ecclesiastical courts who did not possess it. *Parsons* v. *Parsons,* 9 N. H. 309; *Warner* v. *Warner,* 69 N. H. 137, 138; *Bickford* v. *Bickford,* 74 N. H. 448, 452. In 1791, the legislature passed an act defining the causes for which divorces might be decreed, Laws, *ed.* 1792, *p.* 265, but no regulations were enacted as to procedure in divorce trials. The manner in which the jurisdiction should be exercised was left to the court without legislative direction.

Whether the procedure adopted was influenced by what was known of the practice before the ecclesiastical courts in England or the procedure in securing a legislative divorce, is mere speculation. It is certain that this jurisdiction, unknown to the common law, was exercised in modes unknown to that law both as to the admission of evidence and in other ways. Although parties could not testify at common law, their evidence appears to have always been received in divorce cases. The trial has never been governed by the strict rules of evidence, but the court has always exercised a broad discretion in the admission and exclusion of evidence and in other respects as well. *Carpenter* v. *Carpenter,* 78 N. H. 440, 455; *Warner* v. *Warner,* 69 N. H. 137, 138; *Melvin* v. *Melvin,* 58 N. H. 569; *Brown* v. *Brown,* 37 N. H. 536; *Corson* v. *Corson,* 44 N. H. 587.

From the foregoing it appears that, when the words *civil cause* were originally used in the statute upon which reliance is placed, no court here or elsewhere had power to decree or hear a petition for absolute divorce, that the act was passed to correct a defect in strictly common law administration and its authors could not have had in view procedure then unknown and not created for over three quarters of a century thereafter; that procedure at trials under this jurisdiction has been regulated by the court without interference from the legislature, a procedure to which the rules of strictly common-law practice had no application. In it the doctrines of default, review and the incompetency of parties as witnesses had no place. The procedure has been limited only by the wise judgment of the court whose rule for nearly three quarters of a century has prohibited the taking of depositions except under the direction of the court.

It is, therefore, beyond question that chapter 225, P. S., "Depositions" has no reference to depositions in divorce cases. In *Whipple* v. *Whipple*, 43 N. H. 235, it appears to have been objected that the depositions had been taken upon insufficient notice. The court instead of rejecting the depositions because of failure to comply with the rule as to notice in the case of depositions taken under the statute say that "In divorce cases, reasonable notice of the taking of depositions is ordinarily such notice as is required by the rules in other cases," and such notice not having been given, rejected the depositions. This implies an understanding that depositions in divorce cases were not taken under the statute and asserts full control over the matter. This control so long exercised is not taken away by the reënactments of a statute adopted for another purpose and reënacted with no more reference to divorce cases than the statute of 1857 (Laws 1857, *c.* 1952), permitting parties to testify generally, had to that class of cases in which they had always testified.

The exception is sustained because the rule of law upon which the orders made are stated to be based is found to be erroneous, and the orders made are set aside.

Under the rule or without it, the court has power to make such order as justice under the exigencies of the case requires, either permitting or prohibiting the taking of Mrs. Clough's deposition.

*Case discharged.*

All concurred.