Hillsborough,
Jan. 1, 1924.

### STATE v. EUGENE DESMARAIS.

Under Laws 1919, c. 99, s. 4, the possession of intoxicating liquor is not conclusive but only *prima facie* evidence of a violation of that section, and the provision as to possession does not apply to any intoxicating liquor in the possession of any person if lawfully acquired by him.

To render the *prima facie* evidence of possession conclusive of guilt, it must be found by the jury that the person having possession of the liquor acted unlawfully in acquiring possession of it, and acquisition for use as a beverage only, and not for the purpose of illegal sale, gift or furnishing to others is not unlawful possession.

APPEAL, from a conviction in the municipal court of Manchester upon a complaint charging illegal possession of intoxicating liquor. Trial by jury. The state's evidence tended to prove that the respondent ordered one hundred gallons of alcohol to be delivered to him in Bedford, that he went to the place of delivery and took possession of the liquor. The defendant testified that he went to the place in Bedford by invitation and was there furnished with liquor by others so that he became intoxicated; that he was shown liquor brought from Massachusetts and asked to try it by others who had ordered it; that he took a can of it, diluted it with water,

drank some of it and then gave the can and liquor back to one of the party.

The respondent excepted to the following portion of the charge to the jury: "If you are convinced to the extent which I have described, either that the liquor was ordered for him and he went out to Bedford and took it under his control; or that it was purchased by others and he assisted them in handling it, or that he took some of it into his possession for use as a beverage, then it is your duty to return a verdict of guilty. If you are not so convinced it is your duty to return a verdict of not guilty."

The jury having returned a verdict of guilty, the questions raised by the exception were transferred by *Sawyer*, J.

*Ferdinand Farley*, solicitor, for the state.

*Branch & Branch* (*Mr. Frederick W. Branch* orally), for the defendant.

PARSONS, C. J. "Sect. 20. The procuring, possessing, furnishing, giving away or transporting intoxicating liquor, except as provided for in chapter 147 of the Laws of 1917 or amendments thereto, and any shift or device to evade the provisions of any law now or hereafter in force, in relation to intoxicating liquor, are prohibited, and the penalties for a violation of any of the provisions of this section shall be the same as in the case of selling or keeping for sale intoxicating liquor; *provided* that the provisions of this section shall not apply in the case of any intoxicating liquor in the possession of any person within this state which has been lawfully procured by such person, but the possession of any intoxicating liquor within this state shall be *prima facie* evidence of violation of this section." Laws 1919, *c.* 99, *s.* 4 [Sect. 20].

The respondent found guilty by the jury of a violation of this section contends that the jury were erroneously instructed in substance that if he took some liquor into his possession for use as a beverage he was guilty of a violation of the statute. The statute does not make the possession of intoxicating liquor conclusive evidence of such violation; it is only *prima facie* evidence. The provision as to possession does not apply to any intoxicating liquor in the possession of any person which has been lawfully acquired by such person. To render the *prima facie* evidence of possession conclusive of guilt it must be found by the jury that the person having pos-

session of the liquor acted unlawfully in acquiring possession of it. The test given the jury in the instruction was the defendant's purpose in taking possession of it. They were told in effect that if his purpose was to use it as a beverage his acquisition of it was unlawful. The state punishes a common drunkard, and public drunkenness, or such drunkenness as disturbs the peace or the family of one charged with the offense. P. S., c. 264, ss. 14, 21; Laws 1903, c. 32. But no statute has been found to denounce and punish the use of liquor as a beverage, except when obtained from one legally authorized to make sale thereof as a druggist or town agent. Laws 1899, c. 71, s. 13; Laws 1917, c. 147, s. 13; Laws 1919, c. 99, s. 2 [18]. When the sale was legal for a specified purpose the law penalized the purchaser who purchased or used for a purpose for which the sale was not authorized. But when the sale was illegal, the penalty was placed on the seller only. As the purpose suggested was not illegal, the entertaining of that purpose in acquiring possession of spirit could not render the acquisition illegal in the absence of a statute so declaring. It might be found that the liquor the defendant drank and that upon which he became intoxicated was unlawfully given or furnished to him by others. The evidence is not entirely clear upon that point. If his mere acceptance of the liquor so given or furnished was also unlawful, then he acquired the liquor, admittedly in his possession, unlawfully, without reference to his purpose in taking possession of it. In that case he would not be prejudiced by the instruction that it must be found he took possession with a particular purpose. The exemption of the statute does not relate to the lawfulness of the acts of others in selling, giving or furnishing the liquor, but solely as to whether it "has been lawfully procured by such person." If such person, the one in whose possession it is found, has violated no statute in obtaining possession of it, it was lawfully procured by him.

As the statute c. 147, Laws 1917, s. 53 forbade the manufacture of intoxicating liquor for beverage purposes, the possession of liquor by the person manufacturing it for that purpose would be unlawfully acquired by him, as undoubtedly, as hereafter considered, would be its acquisition for the purpose of illegal sale, gift or furnishing to others. The possession of liquor not manufactured by the holder might be acquired by purchase or by gift. The material question is whether such acquisition merely is unlawful in the purchaser or donee. It is of course possible that the possession might be acquired illegally from one authorized to sell or through some common-law

or statutory crime applicable to property generally, but these possibilities need not now be considered.

Except for the local option license statute in force from 1903 to 1917 the state has sought since 1855 to suppress the intemperate use of intoxicating liquor by prohibiting its sale generally, with special provision for such sale for medicinal, mechanical and scientific purposes by specially authorized persons. *State* v. *Corron*, 73 N. H. 434, 440. While during all the period since 1855 with the local option exception noted, the sale of such liquor was strictly prohibited, the purchase of spirit has not been denounced unless it is penalized by the statute under discussion. As in the "Act to protect the public against the sale of worthless securities," Laws 1917, c. 202, "the sale only is penalized, not the purchase." *Karamanou* v. *Company*, 80 N. H. 420, 423. The section under which the respondent is charged first appears as *s.* 8, *c.* 122, Laws 1903, re-enacted without material change as *s.* 20, *c.* 147, Laws 1917, as follows: "The procuring, furnishing, or giving away of intoxicating liquor, or any shift or device to evade the provisions of this act, shall be deemed unlawful selling within the provisions of this act, and the punishment shall be the same as in the case of selling or keeping for sale intoxicating liquor. The words 'furnishing or giving away,' where they occur in this act, shall not apply to giving away intoxicating liquor by a person in his private dwelling, unless said private dwelling is a place of public resort."

The purpose of the section appears to have been to meet attempts to cover illegal sales of liquor by pretence of gift or other device. In declaring such transactions should be deemed illegal selling the statute aimed at the one disposing of or distributing liquor. If as a result of the legislative fiat the donor of liquor without money or price became a seller, it might logically follow, though not so specially declared, that the gratuitous donee became in the legislative thought a purchaser of liquor. But conceding this to be so, no penalty was imposed upon one made a purchaser by legislative act which did not attach to one voluntarily assuming that position. The word procuring, however, is not limited to the transferer of liquor. It may and does more properly apply to the other party to the transaction. To procure is "to bring into possession; to acquire; to gain; to get; to obtain by any means, as by purchase or loan — often with indirect object." Webster's Dict. It means to obtain for oneself or for another. In the sinister sense in which the word is often used it refers to the action of one in behalf of another. *People* v. *Roderigas*, 49 Cal.

9, 11. If the word is here used as meaning to obtain for oneself, to purchase, it effects a complete change in the policy of the law since 1855, penalizes the purchaser instead of the seller. If such a complete reversal of the policy which had continued nearly fifty years had been intended, it is probable such change would have been set forth in apt words and not in a term which in the same sentence is declared to constitute "unlawful selling." If the purpose had been to punish the purchaser of intoxicating liquor, the act of purchase would have been penalized or prohibited in plain terms and not by the bungling device of declaring a purchase a sale and a purchaser a seller. If there is anything which can fairly be included under the term procuring, and also described as selling, it is probable the legislature used the word in such limited sense. To obtain for another would be to procure, and such a proceeding might well be deemed a sale by the one contriving or bringing it about. One evil aimed at was without doubt the supply of liquor to persons of such known habits that they could not obtain it by purchase even from illegal sellers. By denouncing as illegal sales the acts of any who might so procure liquor for others and punishing the procurer as a seller although in fact a mere agent to purchase, it was probably intended to stop as much as possible this source of supply. The act furnishes conclusive evidence that it was not understood that in prohibiting "procuring" the recipient of liquor had been penalized. After providing that furnishing or giving away intoxicating liquor should be deemed unlawful selling it is further provided that the words "furnishing or giving away" where they occur in the act should not apply to giving away intoxicating liquor by a person in his private dwelling. This means that one might lawfully give away liquor in his home. The legislative purpose to permit hospitality of this sort would have failed if at the same time the act were construed to mean that persons accepting such hospitality and thereby obtaining liquor were punishable by fine and imprisonment.

The section has been a part of the law relating to intoxicating liquor for twenty years and it is not believed any one has ever claimed its effect was to make the purchase or reception of liquor a crime. The legislature of 1917 when the whole law on the subject was re-enacted did not understand that to be the effect of the language in s. 20, c. 147. If obtaining for oneself was the offense aimed at, one who purchased, accepted or secured liquor in any way would be within the penalty and subject to a fine of from $25 to $100 and imprisonment from thirty to sixty days. *Ib.. s.* 19. A later section

of the same chapter (*s.* 38) declares it unlawful for one convicted of drunkenness to purchase any intoxicating liquor within a period of twelve months after his conviction except for *bona fide* medicinal use upon the advice and prescription of a. physician duly registered in New Hampshire and attaches as a penalty for a violation of the section a fine of not more than ten dollars and imprisonment for not less than thirty days nor more than ninety days.

If one not convicted of drunkenness could not legally purchase liquor there was no occasion for declaring the purchase by one so convicted unlawful and prescribing a penalty of a less fine. The provision would not have been adopted if it had been understood such purchase was unlawful for one unconvicted.

The language used in the original act and its re-enactment, the general understanding of the bar, and the policy of the legislation since 1855 make it clear that the legislature did not intend to penalize the recipient or purchaser of liquor, that by procuring in the statute is meant obtaining for another and not for oneself, and hence the jury should have been instructed that if the respondent took possession of the liquor to use himself for beverage purposes, as the evidence tended to show, he could not, rather than that he must, be found guilty.

As before suggested, drunkenness is punishable as a police offense; the convict is also to be discharged if he testifies freely where he obtained his liquor. Laws 1917, *c.* 147, *s.* 30. One cannot drink liquor except he first has possession of it.

The result of a construction that would sustain the charge is that the law intends that one imbibing intoxicants to the disturbance of the peace or so as to make himself a nuisance to his family and others should go unpunished, while one drinking the smallest quantity of "any beverage any part of which is intoxicating" (Laws 1917, *c.* 147, *s.* 60) is liable to the serious penalty imposed for illegal sale. Such meaning is not distinctly declared and it is improbable it was intended.

The section under which the defendant is charged was the re-enactment in 1919 of *s.* 20, *c.* 147, Laws 1917; Laws 1919, *c.* 99, *s.* 4 [20]. In this re-enactment, the exemptions of the act of 1917 are renewed by reference to that act, and the possession of liquor included within the prohibitions. It is not probable in so specifically re-enacting the act there was any purpose to change the meaning of the clause re-enacted. If the use of the word procured in the sense simply of acquired or obtained in the exemption from the prohibition

of the act of liquor "lawfully procured by such person" is some evidence as to the meaning of the word to the draftsman of the exception, it is insufficient to overbalance the substantially conclusive evidence as to the legislative meaning already discussed. The same word may have different meanings in different parts of the same statute. *Barker* v. *Young*, 80 N. H. 447; *Clough* v. *Clough*, 80 N. H. 462. The sense in which a word is used in 1919 does not necessarily change the meaning given the same word when first used sixteen years before.

If the legislature in 1919 had understood the beverage use of alcohol to be forbidden by law, it would not have been thought necessary to specially penalize such use of the alcoholic extract of ginger. Laws 1919, *c.* 99, *s.* 21. The general purpose in all the legislation on the subject was to prevent the use of intoxicating liquor as a beverage. But unless the legislature has thought it wise to declare particular acts criminal, punishment cannot be inflicted for acts not so declared although in conflict with this general purpose. Whether the drinking of liquor merely should be directly penalized is a legislative not a judicial question.

The defendant's contention that the prohibition of the beverage use of spirit is an unconstitutional interference with the liberty of the individual has not been considered.

*Exception sustained: verdict set aside: new trial.*

YOUNG, J., dissented: the others concurred.